UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RABO AGRIFINANCE, LLC,<br><br>                  Plaintiff,<br><br>v.<br><br>SUKHRAJ PAMMA, et al.,<br><br>                  Defendants. | No. 2:24-cv-01392-DJC-CKD<br><br><br>ORDER |

Plaintiff Rabo Agrifinance, LLC has filed a motion for temporary restraining order seeking the appointment of a temporary receiver.  Plaintiff previously provided loans to several Defendants to this action, and Plaintiff claims that they ultimately defaulted on those loans.  Plaintiff now seeks the appointment of a receiver to secure collateral located at 6188 Luckehe Road, Live Oak, California 95953, as well as the issuance of a temporary restraining order.

For the reasons stated below, Plaintiff's Motion to Appoint a Temporary Receiver and Motion for Temporary Restraining Order are granted.

**BACKGROUND**

Plaintiff asserts that beginning around July 5, 2016, Plaintiff extended a revolving line of credit to Defendant Sutter Buttes Mercantile LLC ("SBM"), which operates a walnut processing plant.  Defendant Sukhraj Pamma signed the loan

documents on behalf of Defendant SBM as its manager.  SBM's line of credit was secured with various SBM property which includes the real property 6188 Luckehe Road, Live Oak, California 95953, and items of personal property located there.  There does not appear to be a dispute that Defendant SBM defaulted under the terms of two separate loan credit agreements and remains in default.  Plaintiff and Defendants later entered into a Forbearance Agreement where Plaintiff agreed to forebear any further enforcement actions for a period of time and Defendants, including SBM, acknowledged the amount and fact of their default.  The forbearance period ultimately lapsed without the loan obligations being satisfied.  As a result, Plaintiff is seeking to recover outstanding principal and accrued interest on the defaulted loans through enforcement of the security agreements.  The Court previously granted Plaintiff's request to attach the collateral located at the 6188 Luckehe Road address.

Plaintiff has now filed a Motion to Appoint a Temporary Receiver and Motion for Temporary Restraining Order.  Briefing on those Motions is now completed.  (Mot. (ECF No. 75-1); Opp'n (ECF No. 83); Reply (ECF No. 85).)  On May 20, 2026, the Court held oral argument, at the conclusion of which, this matter was submitted.

## MOTION TO APPOINT TEMPORARY RECEIVER

### I.   Legal Standard

The appointment of a receiver is an extraordinary equitable remedy that is applied with caution.  *Canada Life Assurance Co. v. LaPeter*, 563 F.3d 837, 844 (9th Cir. 2009) (citing *Aviation Supply Corp. v. R.S.B.I. Aerospace, Inc.*, 999 F.2d 314 (8th Cir. 1993)).  In determining whether a receiver should be appointed, courts look to a variety of factors.  Most commonly referenced is the non-exhaustive list of factors provided by *Canada Life Assurance Co. v. LaPeter*.  *Canada Life* identifies the following as relevant factors:

> (1) whether the party seeking the appointment has a valid claim; (2) whether there is fraudulent conduct or the probability of fraudulent conduct by the defendant; (3) whether the property is in imminent danger of being lost,

2

> concealed, injured, diminished in value, or squandered; (4) whether legal remedies are inadequate; (5) whether the harm to plaintiff by denial of the appointment would outweigh injury to the party opposing appointment; (6) the plaintiff's probable success in the action and the possibility of irreparable injury to plaintiff's interest in the property; and, (7) whether the plaintiff's interests sought to be protected will in fact be well-served by receivership.

*Id.* at 844 (cleaned up).  Additionally, and of particular relevance in this case, while a party's prior consent to the appointment of a receiver is not dispositive of whether the Court should appoint a receiver, such consent is still "a factor that commands great weight" in the Court's analysis.  *Sterling Sav. Bank v. Citadel Dev. Co.*, 656 F. Supp. 2d 1248, 1260 (D. Or. 2009) *see also KS StateBank Corp. v. Peters*, No. 25-cv-02576-PHX-ROS, 2025 WL 3294967, *9 (D. Ariz. Nov. 26, 2025) (collecting cases).

## II.  Discussion

As a starting point here, there is no dispute that Defendant SBM previously agreed to terms that included consent to the appointment of a receiver and an agreement to not oppose a request that a receiver be appointed.[1]  While this is not dispositive, it is nevertheless a factor of substantial weight in weighing the other *Canada Life* factors.

Turning to those other factors, *first*, there appears to be no dispute that Plaintiff has a valid claim.  *Second*, there is no clear direct indication of fraudulent conduct. That said, it appears that Defendant Sukhraj Pamma, owner of SBM, may have failed to include a lease on the subject property in his bankruptcy proceedings (*see* Reply at 4–5), and the oral argument counsel for the Trustee assigned to the bankruptcy case noted that the Trustee had faced difficulty in obtaining information from Mr. Pamma. While not overwhelming evidence of the probability of fraudulent conduct, these

---

[1] During oral argument, Defendant's counsel conceded that opposing the present motion may itself constitute a contractual violation by Defendant.  This is not of direct relevance to the present Motion but is of some note.

actions in the bankruptcy proceeding heighten the Court's concern of possible future fraudulent conduct.

*Third*, the ongoing usage of the processing plant and its equipment necessarily results in a reduction of the value of that collateral.[2] *Fourth*, the availability of legal remedies is a neutral factor; while it is undisputed that SBM's liabilities are greater than its assets, it is unclear at this point whether Plaintiff's claims are oversecured or undersecured at this stage. *Fifth*, the potential harm to Plaintiff in denial outweighs the harm to Defendant in the appointment of a receiver. While there may be some impact on third parties who will face a delay (but not spoliation) in their walnuts being processed, Defendant has not established any harm to SBM in the appointment of a receiver.

*Sixth*, it appears likely that Plaintiff will succeed in this action and that failure to appoint a receiver might result in irreparable injury. Given the fact that Defendant Sukhraj Pamma is presently in bankruptcy proceedings and SBM is likely insolvent, there is substantial risk to Plaintiff's ability to ever recover the amounts Defendant owes. *Seventh*, a receivership is well suited to protect Plaintiff's interests. While Defendant may ultimately be correct that the receivership will be short-lived, it is unclear at this stage whether that is true. Given the risks posed by SBM's apparent insolvency and the potential for the diminished value of collateral through the ongoing operation of the plant, the interests will be well-served by a receivership.

The Court finds that all of the *Canada Life* factors are neutral or favor the appointment of a receiver. With the additional factor of Defendant's consent to a receivership, to which the Court affords great weight, appointment of a receiver is

---

[2] In their Motion, Defendants make passing mention to the possibility that certain items including "equipment, fixtures, accounts, contract rights, documents of title, instruments, inventory, general intangibles, proceeds, and books and records relating to the Collateral" might be "concealed, transferred, moved and/or secreted." (Mot. at 11.) Counsel for the bankruptcy trustee seemed to indicate similar concerns at oral argument about access to more accurate records at the processing plant. However, given the general nature of these suggestions, the Court does not make its determination on this basis.

clearly appropriate.  Accordingly, Plaintiff's Motion to Appoint Temporary Receiver is granted.

**MOTION FOR TEMPORARY RESTRAINING ORDER**

## I.  Legal Standard

A temporary restraining order may be issued upon a showing "that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition."  Fed. R. Civ. P. 65(b)(1)(A).  In determining whether to issue a temporary restraining order, courts apply the factors that guide the evaluation of a request for preliminary injunctive relief: (1) likelihood of success on the merits; (2) irreparable harm in the absence of preliminary relief (3) the balance of equities and (4) the public interest.  *See Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (explaining that the analysis for temporary restraining orders and preliminary injunctions is "substantially identical").

## II.  Discussion

In addition to appointment of a receiver, Plaintiff also requests the issuance of a Temporary Restraining Order restraining Defendant SBM, its agents, or any third parties from interfering with the receiver's performance of his duties as well as from removing, concealing, transferring, encumbering, or otherwise making collateral unavailable.  For many of the reasons discussed above the Court will also grant this request.  Plaintiff has shown a likelihood of success on the merits of their claim that Defendant SBM defaulted on the loan.  Given the likely insolvency of SBM and the potential for depreciation of collateral, Plaintiff has also established the potential for irreparable harm in the absence of preliminary relief.  The balance of equities here also clearly weighs in Plaintiff's favor.  The public interest factor is mixed given the potential impact on third-party growers, but this impact does not outweigh the other factors favoring the issuance of a temporary restraining order.  Accordingly, Plaintiff's Motion for Temporary Restraining Order is also granted.

**CONCLUSION**

For the reasons stated above, IT IS HEREBY ORDERED that:

1. Plaintiff's Motion to Appoint a Temporary Receiver (ECF No. 75) is GRANTED;

   a. Temporary Receiver – Vito Mitria ("Mr. Mitria") and Beacon Management Advisors, LLC ("BMA") (collectively "Receiver") are appointed temporary receiver of all the personal property identified in Exhibit A attached to Plaintiff's Proposed Order (ECF No. 75-6) and incorporated herein by this reference (hereinafter, the "Collateral" or the "Receivership Estate") and generally located at 6188 Luckehe Road, Live Oak, Sutter County, California 95953 (hereinafter, the "Property").

   b. Receiver's Bond and Oath – Before entering upon his duties, Receiver shall:

      i. Execute and file a receiver's oath to perform his duties faithfully; and

      ii. File a bond issued by a surety in the sum of $10,000.00 to the effect that he will faithfully discharge his duties as Receiver in this action and obey the orders of this Court.

   c. Receiver's Fees – Receiver shall be entitled to interim compensation for his services at the hourly rates stated in Exhibit B attached to Plaintiff's Proposed Order (ECF No. 75-6), or in such subsequent orders as the Court may enter, and shall be reimbursed for all reasonable expenses incurred by them on behalf of Receivership Estate.

   d. Prohibited Agreements – Receiver shall not enter into any agreement with any party to this Action about the administration of Receivership Estate or about any post-receivership matter.

e. Initial Inventory – Within 30 days after filing his oath and bond, Receiver shall file an inventory of all property possessed under this Order.

f. General Duties – After qualifying, Receiver is authorized and empowered to gain access to the Property to take possession and control of the Collateral, and its proceeds, including the books and records of defendant SUTTER BUTTES MERCANTILE, LLC, a California limited liability company ("SBM" or "Defendant"), and to take all actions necessary to, among other things, enforce RABO's rights to the Collateral including, but not limited to, collecting it, demanding and collecting proceeds of the Collateral, and taking all measures necessary and appropriate to hold, preserve, process, assemble, insure, prepare for its sale or lease, or otherwise dispose of the Collateral.  For the avoidance of doubt, Receiver is empowered to take control and possession of SBM's bank accounts and bank statements, and contact SBM customers regarding accounts receivable and their proceeds, as well as existing inventory being stored or in process. Receiver is authorized to endorse checks payable to SBM, to send notice to account debtors directing the same to make payments due to SBM which are part of RABO's Collateral or the proceeds thereof to Receiver, to take whatever actions are reasonable and necessary to collect the SBM accounts receivable, and to compromise the amounts owing from account debtors when in Receiver's reasonable business judgment it is appropriate to do so.  Receiver is also empowered to identify any personal property on the Property not belonging to SBM and make arrangements for its removal or return to its rightful owner(s) or lessor(s).

7

Receiver may perform the duties, activities and tasks of a Receiver in this case. Receiver is authorized to employ servants, agents, employees, and clerks; without further leave of court, to bring suit in his own name as Receiver deems necessary to protect, preserve, and maintain the rights, privileges and property of Receivership Estate; to compromise debts and to do all things and to incur the risks and obligations ordinarily incurred by owners, managers, and operators of similar property and that no such risk or obligation so incurred shall be the personal risk or obligation of said Receiver but shall be a risk or obligation of Receivership Estate.

g. Periodic Reporting – Receiver shall prepare periodic interim statements reflecting Receiver's fees and administrative costs and expenses incurred for said period in the operation and administration of Receivership Estate herein. Upon completion of an interim statement, and mailing said statement to the parties' respective attorneys of record, Receiver shall pay from Estate funds, if any, the amount of said statement. Despite the periodic payment of Receiver's fees and administrative expenses, said fees and expenses shall be submitted to the Court, for its approval and confirmation, in the form of either a noticed interim request for fees, stipulation among the parties, or Receiver's Final Account and Report.

h. Additional Duties – Receiver is authorized and directed to collect and open all mail of SBM relating to SBM's business and/or the Collateral, and Receiver shall hold all monies coming into his possession to be expended for the following purposes and in the following priorities:

   i.  for the expense of administering the Receivership Estate;

   ii.  for all expenses incurred by Receiver in protecting and preserving the Collateral;

   iii.  for interim Receiver's fees to be paid monthly and to be paid by Receiver from such funds as are in his possession; and

   iv.  the remainder of funds to be deposited into a depository designated by the Court entitled, "Receiver's Account", together with the name and number of the action, pursuant to Local Rule 232, until further order of the Court.

i.  Borrowing Funds – Receiver is expressly authorized to borrow from RABO such funds as are necessary to perform his duties. No obligation on the part of RABO to advance or loan funds to Receiver herein shall arise prior to Receiver's preparation of a budget for management and operation and the approval of said budget by RABO.  Receiver is authorized to and shall issue to RABO Receiver's certificates as evidence of receivership indebtedness. All Receiver's certificates shall be executed and delivered by Receiver as a condition to funding, and shall be numbered in sequential order, for redemption purposes.  All indebtedness represented by a Receiver's certificate shall have priority over all other liens on Receivership Estate. Further, all sums advanced and represented by a Receiver's Certificate shall bear interest at the same rate that interest currently accrues under the SBM promissory note(s) which are the subject of this Action. All such advances made by RABO shall also be deemed advances for the protection of RABO's Collateral, and as such shall be secured by the SBM Security Agreements and any other security

9

instruments with a priority equal to the priority of the original obligation(s) secured thereby.

j. No Preparation of Tax Returns – Receiver is not authorized nor is he empowered to file or prepare tax returns or pay taxes on behalf of SBM.

k. Employment of Counsel and Other Professionals – Receiver may employ counsel, accountants and other professionals upon order of the Court approving such employment pursuant to Local Rule 232.

l. Court Instructions – Receiver, or any party to this action, may, on due notice to all parties, make application to this Court for further orders instructing Receiver and/or for additional powers necessary to enable Receiver to perform Receiver's duties properly.

m. Insurance – SBM shall notify Receiver at the time Receiver takes possession of the Collateral of the type(s) and amount(s) of insurance coverage thereon. If Receiver determines sufficient coverage exists, SBM shall be responsible for and is hereby ordered to make certain that Receiver is named as an additional insured on such policy for the entire period that Receiver shall be in possession of the Collateral.  If Receiver determines the insurance coverage insufficient, it is hereby ordered that Receiver shall have fifteen (15) business days from his qualifying appointment to procure adequate insurance on the subject property; during such period, Receiver shall not be responsible for claims arising with respect to the subject property, or for the procurement of insurance. If Receiver discovers sufficient insurance coverage does not exist, Receiver shall notify RABO in writing of the lack of adequate insurance coverage for the

Collateral. Receiver may thereafter procure such insurance coverage as he deems sufficient. If Receiver does not have sufficient funds to obtain insurance, Receiver shall seek instructions from the Court on whether to obtain insurance and how it is to be paid.

n. Enforcement of Order – The United States Marshal is directed and ordered to assist Receiver in every capacity in which said Marshal's assistance may be required to enable said Receiver to take and safely keep possession and control of the Collateral which is the subject of this receivership. Receiver may also present this Order to such other law enforcement as he may deem appropriate in furtherance of his duties under this Order.

o. Bank Accounts – Except as stated above, Receiver may establish accounts at any financial institutions insured by an agency of the United States government that are not parties to this proceeding and deposit such funds as come into his possession for expenditures set forth herein, with the remainder to be deposited in the Receiver's Account depository designated above.

p. Taxpayer ID – Receiver may use any federal taxpayer identification numbers relating to SBM or the Collateral for any lawful purpose.

q. RABO's Notice of Termination – RABO shall notify Receiver in writing within 48 hours of any event within its knowledge that terminates the Receivership Estate.

r. Receiver's Final Report and Account and Discharge

   i. Motion required – Discharge of Receiver shall require a court order upon noticed motion for approval of Receiver's final report and account and exoneration of Receiver's bond;

11

   ii. Time – Not later than 60 days after the receivership terminates, Receiver shall file, serve, and obtain a hearing date on a motion for discharge and approval of the final report and account;

   iii. Notice – Receiver shall give notice to all persons of whom Receiver is aware who have potential claims against Receivership Estate;

   iv. Contents of Motion – The motion to approve the final report and account and for discharge of Receiver shall contain the following:

     1. Declaration or Declarations – A declaration or declarations: (a) stating what was done during the receivership, (b) certifying the accuracy of the final accounting, (c) stating the basis for the termination of the receivership (such as foreclosure or reinstatement), and (d) stating the basis for an order for the distribution of any surplus or payment of any deficit; and

     2. Accounting Summary. A summary of the receivership accounting, which shall include (a) the total revenues received, (b) the total expenditures identified and enumerated by major categories, (c) the net amount of any surplus or deficit, and (d) evidence of necessary supporting facts.

 s. Disclosure – RABO shall promptly notify Receiver in writing of the names, addresses, and telephone numbers of all parties who appear in the action and their counsel.  The parties shall give notice to Receiver of all events that affect Receivership Estate.

12

t.  The Receiver shall cooperate with the bankruptcy Trustee and provide the bankruptcy Trustee with all necessary access to the books and records of Defendant SBM.

2.  Plaintiff's Motion for Temporary Restraining Order (ECF No. 75) is GRANTED.

a.  SBM and its respective members, agents, servants, employees, representatives, and all persons acting under and in concert with, or for them, are restrained and enjoined until further order from engaging, and committing or performing, directly or indirectly, all of the following acts:

i.  Interfering, hindering or molesting in any manner whatsoever said Receiver in the performance of any duties incidental thereto;

ii.  Demanding, collecting, receiving, or in any way diverting or using any of the payments, income and revenue from any of SBM's accounts receivables or other amounts due SBM;

iii.  Exercising any control whatsoever over the Receivership Estate and doing any act that will impair the preservation of the Receivership Estate or RABO's interest in the Collateral; and

iv.  Transferring, removing, concealing, transferring, secreting, encumbering or otherwise disposing of or making unavailable any of the Collateral or any part thereof pending the hearing on the OSC or further order of this Court.

b.  SBM and its respective members, agents, servants, employees, representatives and all persons acting under and in concert with, or for them, shall cooperate with Receiver and comply with his

13

requests for information and documentation relating to the Collateral.

    c. SBM and its respective members, agents, servants, employees, representatives and all persons acting under and in concert with, or for them, shall, upon entry of this Order, turn over to Receiver possession of all information relating to accounts receivable and/or any other amounts due SBM from any source.

    d. Given the limited scope of relief ordered, the Court finds no amount of bond is necessary.

3. On or before April 1, 2026, Defendants are ordered to show cause why a Preliminary Injunction should not be entered on the same terms. Plaintiff may file a reply on or before April 3, 2026, after which this matter will be submitted without further oral argument.

Dated:  May 22, 2026      /s/ Daniel J. Calabretta
_____
THE HONORABLE DANIEL J. CALABRETTA
UNITED STATES DISTRICT JUDGE

14